**Pamela L. SHORT, Plaintiff-counter-defendant—Appellant,**

v.

**SINGER ASSET FINANCE COMPANY LLC, Defendant-counter-claimant—Appellee.**

No. 02–36125.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 2004.

Decided Aug. 4, 2004.

M. Karl Shurtliff, Esq., and Stephen J. Lord, Boise, ID, for Plaintiff-counter-defendant—Appellant.

Kenneth D. Nyman, Esq., Anderson, Julian & Hull LLP, Boise, ID, for Defendant-counter-claimant—Appellee.

Before: PREGERSON, THOMPSON, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Pamela L. Short seeks to invoke the anti-assignment clause of her structured settlement in order to avoid her obligations under a subsequent contract, in which she purported to assign certain settlement payments to Singer Asset Finance Co. ("Singer"). Short appeals the district court's judgment as well as the subsequent award of attorney's fees. For the reasons discussed below, we reverse.

■ As an initial matter, we find that the structured settlement's anti-assignment clause deprived Short of not only the *right* to make the assignment to Singer, but also the *power* to do so. The parties' intention in this regard is clearly manifested by the plain language of the structured settlement's anti-assignment clause, which expressly curtails Short's "power" to assign. *See Liberty Life Assurance Co. of Boston v. Stone Street Capital, Inc.*, 93 F.Supp.2d 630, 637 (D.Md.2000); *see also Bel–Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 442 (3d Cir.1999) (noting that the parties' clearly manifested intention controls). This language of the anti-assignment clause stands in contrast to other prohibitions in the structured settlement, which state that particular steps "cannot" be taken by Short, or that a party "shall not" undertake other actions. The conclusion that the parties intended to deprive Short of the power to assign is further supported by the fact that the anti-assignment provision furthers obvious and important tax advantages that can be lost through assignment. *See* 26 U.S.C. §§ 104(a)(1) & (2), 130; *see also See CGU*

*Life Ins. Co. of Am. v. Metro. Mortgage & Sec. Co.*, 131 F.Supp.2d 670, 679 (E.D.Penn.2001); *Liberty Life Assurance*, 93 F.Supp.2d at 638. Short's structured settlement makes explicit reference to the relevant tax code provisions. Because we find that Short lack the power to assign her payments, her attempted assignment is null and void. Legally, no agreement existed between Short and Singer.

■ We find that the district court erred by resurrecting the assignment through the equitable doctrine of quasi-estoppel. "Quasi-estoppel prevents a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions." *Garner v. Bartschi*, 139 Idaho 430, 80 P.3d 1031, 1038 (Idaho 2003). "Quasi estoppel applies when it would be unconscionable to allow the party to be estopped to change positions from one they acquiesced in or from one they accepted a benefit." *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 75 P.3d 194, 199 (Idaho 2003).

True, Short has changed positions with respect to the enforceability of the anti-assignment provision. In the agreement with Singer, Short explicitly waived any restrictions imposed by the anti-assignment clause of the settlement agreement; she now seeks to enforce the clause. But we find that the advantage that results from Short's reliance on the anti-assignment clause is only "unconscionable" if it allows her to retain the $35,900 that she initially received from Singer. The district court should have found that the assignment was null and void and entered judgment accordingly. Such judgment would have required Short to return the $35,900 and avoided an unconscionable result.[1]

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. At argument, counsel for Short argued that

Even if Short's reluctance to return the $35,900 is nevertheless relevant to our inquiry, we still find that, in light of the equities, the district court erred in applying the doctrine of quasi-estoppel. First, as the obviously more sophisticated party—one that has been engaged in purchasing and litigating structured settlements across the country—Singer should have been aware of the true purpose and scope of the settlement agreement's non-assignment clause. Instead, Singer's boiler-plate contract language misrepresented the purpose of the clause. Depriving Singer of the benefit of its contract with Short therefore does not impose an unconscionable disadvantage on Singer.

Second, we note that there is a strong public policy against "factoring transactions" such as the one entered into between Short and Singer. See Good v. Good, 79 Idaho 119, 311 P.2d 756, 762 (Idaho 1957) ("[T]he rules of equity must be so applied as to serve the public interest and the public policy of the state."); see also In re R & P Capital Res., Inc., 2 Misc.3d 220, 772 N.Y.S.2d 461, 462 (N.Y.Sup.Ct.2003) ("[T]hese purchases have not been looked upon favorably by courts or legislatures. In particular, courts have refused to approve factoring transactions where the annuity contract contains a non-assignment clause."); 144 Cong. Rec. S11499–01, S11500 (1998). Both the federal government and Idaho

have recently enacted strong measures to deter factoring transactions such as the one at issue in this case. 26 U.S.C. § 5891(a); Idaho Code § 28–9–109(d)(13). To invoke the rules of equity in favor of Singer would be to ignore the uniform public policy against factoring transactions, something we decline to do.[2]

■ We find that the appropriate remedy is, in effect, to rescind the contract between Short and Singer. In light of this determination, we reverse the award of attorney's fees made pursuant to Idaho Code § 12–120(3). Because neither party has achieved the result sought, our ruling constitutes a mixed outcome. Therefore, there is no "prevailing party" and no award of attorney's fees is appropriate. See Jeremiah v. Yanke Mach. Shop, Inc., 131 Idaho 242, 953 P.2d 992, 999 (Idaho 1998); Jones v. Whiteley, 112 Idaho 886, 736 P.2d 1340, 1343–44 (Idaho App.Ct. 1987).

We reverse and remand to the district court for further proceedings consistent with this ruling.

**REVERSED. REMANDED.**

CALLAHAN, Circuit Judge, dissenting:

As it is founded on benevolent motives, the novel path constructed by the majority opinion in this case is reminiscent of the cliche, "The road to hell is paved with good intentions." We not only build that pro-

---

Short does not have the financial means to repay the $35,900 that she initially received from Singer. That fact, even if true, would not change this outcome. A party cannot prevent the entry of the legally appropriate judgment simply on the grounds that he or she cannot pay an amount required.

2. The district court justified applying the doctrine of quasi-estoppel in part by looking to In re Kaufman, 37 P.3d 845 (Okla.2001). While the facts of that case are similar to the instant case, Kaufman relied on a "well-settled" prin-

ciple of Oklahoma law that prevents an assignor from asserting anti-assignment clauses against the assignee. No such legal principle appears to exist in Idaho. Moreover, Kaufman fails to address the elements of quasi-estoppel, which require an "unconscionable advantage" or an "unconscionable disadvantage." As noted above, were Short required to return the $35,900 consideration, she would not receive an unconscionable advantage. Therefore, we find that Kaufman does not control.

verbial highway but advance our vehicle far along it by assuming the role of settlement-conference judges, rather than accepting our position as appellate judges, and by disregarding controlling authorities that serve as traffic signals commanding us to stop. In sum, because the lane down which the majority travels finds no support in binding Idaho law, and actually detours around it, I respectfully dissent.

Short settled a personal injury claim stemming from a car accident in 1984. Her structured settlement provided that she would receive certain periodic payments beginning in 1986 and continuing until 2045. In 1998, Short entered a purchase agreement with Singer, wherein she expressly waived an anti-assignment provision in her settlement agreement and assigned three of her settlement payments to Singer in exchange for $35,900. Just months after the first settlement payment was due to be assigned to Singer, Short filed a declaratory-relief action seeking to void the purchase agreement on the basis of the anti-assignment clause in the settlement agreement.

Faced with competing motions for summary judgment, the district court was initially inclined to void the purchase agreement. However, when Short insisted upon retaining the money that she received from Singer, regardless of whether the agreement was void, the district court rightly reversed course. Concluding that the doctrine of quasi-estoppel barred Short from enforcing the anti-assignment clause, the district court ordered her to honor the purchase agreement. Our task is to determine whether the district court erred in this judgment.

Although the parties never pointed to such an alley, and the district court never contemplated as much, the majority opinion labors to cobble a new avenue of escape for Short by holding that she did not have the power to assign the payments to Singer. Nowhere on the map of Idaho law can support for this route be traced. This explains why the majority opinion must trek to distant jurisdictions to rely upon *Liberty Life Assurance Co. of Boston v. Stone Street Capital, Inc.*, 93 F.Supp.2d 630 (D.Md.2000), analyzing Maryland law, and *Bel–Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir.1999), construing New Jersey law. To the extent that these authorities are even persuasive, they are not controlling—whereas we are bound by Idaho law.

As properly noted in the majority opinion, Idaho employs the doctrine of quasi-estoppel to keep "a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by changing positions." *Garner v. Bartschi*, 139 Idaho 430, 80 P.3d 1031, 1038 (Idaho 2003). The majority also accurately observes that this doctrine, as applied in Idaho, precludes a party from changing a position if that party has accepted some benefit derived from adopting that position. *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 75 P.3d 194, 199 (Idaho 2003). Nonetheless, the majority opinion incorrectly surmises that allowing Short to change positions and assert the anti-assignment clause would only be unconscionable if she were permitted to keep the $35,900 that Singer paid her.

This notion suspends reality by implicitly acknowledging that it would be unconscionable to allow Short to keep the money that Singer paid her, but then making a U-turn by saying that Short's inability to repay the $35,900 is of no consequence to the ultimate judgment. The majority's view also overlooks the fact that Singer sacrificed any interest or return it might have earned on the sum paid to Short in 1998, which could have been invested elsewhere. Likewise, the majority opinion fails to account for the attorney fees in-

curred by Singer in *defending against* Short's lawsuit, and in trying to recoup the $35,900, if not to realize the benefit of the bargain.

When all is said and done, the majority seems to recognize that it is bound by the long-standing requirement in Idaho law that "the rules of equity must be so applied as to serve the public interest and the public policy of the state." *Good v. Good,* 79 Idaho 119, 311 P.2d 756, 762 (Idaho 1957). What the majority ignores, however, is the fact that the public interest and the public policy of Idaho are not served by purporting to require Short to return the $35,900 while allowing her, in reality, to keep it, and simultaneously permitting her to avoid her contractual obligation to assign three settlement payments to Singer. Therefore, I would affirm the district court, and I dissent from the majority's opinion.