**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51887**

| | |
|---|---|
| MELIAH PORTER CROW, | ) |
| | ) **Filed: April 22, 2025** |
| Petitioner-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| TROY LEE CROW, III, | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge. Hon. Aaron N. Thompson, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming the transfer of real property in a marriage separation agreement, <u>affirmed</u>.

Beard St. Clair Gaffney; Kristopher D. Meek, Idaho Falls, for appellant. Natallia Dummar argued.

Parsons Behle & Latimer; John E. Cutler, Idaho Falls, for respondent. John E. Cutler argued.

_____

GRATTON, Chief Judge

Troy Lee Crow, III, appeals from the decision of the district court, on intermediate appeal from the magistrate court, affirming the magistrate court's judgment enforcing a transfer of real property provision in a marriage separation agreement. Troy claims the provision for transfer of real property did not contain a valid legal description under the applicable statute of frauds. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Meliah Porter Crow and Troy were married in 2000. They separated in 2020 and, incident thereto, they signed a Separation Agreement which was recorded in Bannock County. In the Separation Agreement the parties agreed that Troy would convey the parties' residence to Meliah,

1

described as "The matrimonial home [] located at: 358 Noah St (the "Matrimonial Home") and [] owned by the Parties." No city or state was listed in this description of the property. However, an address including the city, state, and zip code is included on the first page of the Separation Agreement.[1]

Meliah filed a petition for divorce with minor children and later a motion for declaratory judgment, asking the magistrate court to declare the Separation Agreement a valid and binding contract. Troy responded, arguing that the Separation Agreement was invalid and unenforceable because it violated the statute of frauds' requirements for a conveyance of real property. The magistrate court granted the declaratory judgment, holding that the Separation Agreement complied with the statute of frauds. Troy filed a motion for reconsideration, which the magistrate court denied. Troy then requested permission for an interlocutory appeal, which the magistrate court granted. The district court, however, determined that the facts did not warrant a permissive appeal based on Idaho Appellate Rule 12 and remanded to the magistrate court. After a trial, the magistrate court entered a decree of divorce. Troy appealed to the district court, again arguing that the Separation Agreement did not comply with the statute of frauds. The district court affirmed the magistrate court's judgment. Troy again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court. The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011).

---

[1] The Separation Agreement identifies "Meliah Crow of 358 Noah St, Chubbuck, ID 83202" as a party.

# III.

# ANALYSIS

Troy claims the magistrate court and the district court erred because the Separation Agreement purporting to convey real property was required to, but did not, comply with the statute of frauds. Troy argues that the transfer of property provision in the Separation Agreement must, as with other agreements for the conveyance of real property, contain an "exact" description, i.e., a legal description of the property. Meliah asserts that, as the magistrate court and the district court held, Troy's argument is based on the wrong provision of the statute of frauds and the property description in the Settlement Agreement is sufficient under the applicable law. Both parties request attorney fees on appeal.

The interpretation of a statute begins with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas Cnty.*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011).

Troy argues that the Separation Agreement is bound by Idaho law regarding marital settlement agreements as well as contracts involving the transfer of real property. Marital settlement agreements are subject to ordinary contract principles. *Van Orden v. Van Orden*, 170 Idaho 597, 606-07, 515 P.3d 233, 242-43 (2022). Idaho Code § 9-505, entitled "Certain Agreements To Be In Writing," provides, in relevant part:

3

In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

. . . .

3. An agreement made upon consideration of marriage, other than a mutual promise to marry.

4. An agreement for the leasing, for a longer period than one (1) year, or for the sale, of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged.

Idaho Code § 32-917 governs contracts for marriage settlements and provides that such contracts must be in writing, and executed and acknowledged or proved in like manner as conveyances of land are required to be executed and acknowledged or proved. Idaho Code § 55-601 explains the general rule for proving a conveyance of real property as follows:

A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing. The name of the grantee and his complete mailing address must appear on such instrument.

Troy argues that Idaho law does not prohibit, and in fact provides for, additional requirements for property conveyances in marital settlement agreements beyond those in I.C. §§ 9-505(3), 32-917, and 55-601; namely, I.C. § 9-505(4). In support, Troy cites *Ray v. Frasure*, 146 Idaho 625, 629-30, 200 P.3d 1174, 1178-79 (2009), contending that, under the general statute of frauds applicable to real estate transfers, the writing must contain a property description that describes "exactly" what property is being conveyed and "reasonable certainty" is not enough. Troy argues that a legal description of the property is required, quoting the following language from *Ray*: a "physical address is not a sufficient description of the property for purposes of the statute of frauds." *Id*. at 630, 200 P.3d at 1179.

As to Troy's claim that I.C. § 9-505(4) applies to the Separation Agreement and requires a legal description of the property to be conveyed, the magistrate court found that "the legislature, in adopting I.C. § 9-505, clearly extricated marriage contracts from standard conveyances of real property between two unrelated persons." The magistrate court noted that the appellate courts have required different memorialization requirements for the different subparagraphs of I.C. § 9-505, citing *Mickelson Construction, Inc. v. Horrocks*, 154 Idaho 396, 299 P.3d 203 (2013) (relating to the requirements of I.C. § 9-505(2) regarding a guaranty of the debt of another). The magistrate court held that I.C. § 9-505(3), in conjunction with I.C. § 32-917, describes what the legislature

4

intended for satisfaction of the statute of frauds with marriage settlements.[2]  Despite Troy's arguments to the contrary, the magistrate court looked to the language in *Papin v. Papin*, 166 Idaho 9, 21, 454 P.3d 1092, 1104 (2019), and concluded that "[a]s long as the I.C. § 32-917 elements are met, it complies with the memorialization requirement of I.C. § 9-505(3) requirements [sic]--*even if the [Separation Agreement] conveys real property*."  Finally, the magistrate court concluded that the Separation Agreement satisfies the statute of frauds requirements as it is a writing; signed by the "grantor," Troy; identifies the matrimonial home by address; contemplates a quit claim deed; and identifies each party by extended address on the first page, including Meliah at the 358 Noah St., Chubbuck, ID 83202 address.

The district court also held that the statute of frauds requirements for marriage settlement agreements are found in I.C. § 32-917 and I.C. § 9-505(3) and relied on *Papin* for its conclusion. In *Papin*, the Supreme Court held:

> First, it is an absolute requirement that the marriage settlement agreement be in writing.  *See* I.C. § 32-917 ("All contracts for marriage settlements must be in writing . . . .");  I.C. § 55-601 ("A conveyance of an estate in real property may be made by an instrument in writing . . . .").  Second, only the grantor, *i.e.*, the conveying spouse, is required to sign the settlement agreement.  *See* I.C. § 55-601 (explaining that the instrument of conveyance need only be "subscribed by the party disposing of the same").  Third, the settlement agreement must contain the mailing address of the grantee spouse, but *only* if the property that is being conveyed is real property.  This requirement, found in section 55-601, is only necessary for conveyances of real property because the address of the grantee is needed for property tax purposes.  This holding is also supported by the language found in section 32-917, which provides that marriage settlement agreements need only be "executed and acknowledged or proved in *like manner* as conveyances of land are required to be *executed* and *acknowledged* or *proved*."  (Emphasis added).  "Like" is defined as "[e]qual in quantity, quality, or degree; corresponding exactly" or "[s]imilar or substantially similar; of much the same nature."  LIKE, Black's Law Dictionary (11th ed. 2019).  We interpret the Legislature's use of the phrase, "in like manner as conveyances of land," to only refer to the acts of executing, acknowledging, and proving the agreement.  The address requirement would only apply to "conveyances of land."  Thus, the grantee's mailing address is only necessary in a marriage settlement agreement when title to real property is being conveyed or modified.

---

[2]     The magistrate court reasoned that the legislature's election "over the course of over 100 years to keep these two subparagraphs [I.C. §§ 9-505(3) and (4)] distinct" knowing that marital agreements would regularly address the real property of the couple, communicated an intent to treat these two types of agreements differently.

*Papin*, 166 Idaho at 22, 454 P.3d at 1105.

Troy "acknowledges" that the Supreme Court in *Papin* explained the three conditions that must be met but characterizes the Court's analysis as dictum and argues it is confined to I.C. § 32-917, whereas, because a real estate conveyance is contemplated in this case, the requirements of I.C. § 9-505(4) must also be met, but were not. Troy also argues that regardless of I.C. § 9-505(4), those statutory sections specific to marital settlement agreements, I.C. §§ 9-505(3), 32-917, in addition to I.C. § 55-601, require a full legal description of the property. We disagree. The Court in *Papin* was clear about the requirements applicable to a marriage settlement agreement. The requirements of I.C. §§ 9-505(3) and (4) are distinct and subsection (4) does not apply to marital settlement agreements.

Troy cites *Geringer Capital v. Taunton Properties, LLC*, 172 Idaho 95, 101, 529 P.3d 760, 766 (2023) for the proposition that, under the statute of frauds, a description of real property must adequately describe the property such that it is possible for someone to identify exactly what property the seller is conveying to the buyer, which means the legal description of the property. That is true in arms-length, buyer-seller, real estate transactions. Knowing "exactly" what real estate is to be conveyed in a marriage settlement is different from an arms-length transaction, as recognized by the legislature. There is no claim made by Troy that the parties to the Separation Agreement did not know exactly what "matrimonial home" was contemplated.

Troy also cites to *Lexington Heights Dev., LLC v. Crandlemire*, 142 Idaho 276, 92 P.3d 526 (2004) as an example of an agreement where the Court found the legal description inadequate. In *Lexington Heights*, the parties entered an agreement for the sale of about 95 acres but planned to exclude from the sale the five acres that included the residence, swimming pool, volleyball court, and tennis court. *Lexington Heights*, 142 Idaho at 282, 92 P.3d at 532. However, the five acres to be excluded was not described in the agreement. *Id*. The failure to describe a portion of the overall property to be included or excluded in a transaction, as in *Lexington Heights*, is entirely distinct from this case. Here, there is no dispute as to what physical property is included in "358 Noah St." Nothing further is needed here to identify "exactly" what property is the subject of the transfer provision in the Settlement Agreement.

Nonetheless, Troy asserts that even the requirements of I.C. § 32-917 are not met because, in reference to the description of "358 Noah St," "one cannot be certain of the state or city in which the property is located." He contends that the address, with city, state and zip code, on the first

6

page of the Separation Agreement should not be read into the description in the real estate transfer provision because there is no "internal reference" linking the two. The magistrate court found the description sufficient even if one does not consider the address on the first page of the Separation Agreement.[3] We agree. The Separation Agreement satisfied the requirements of I.C. §§ 32-917 and 9-505(3) and sufficiently described the property such that the parties could know exactly what property was contemplated.[4] Moreover, we are not persuaded by Troy's argument that the address listed on the first page should not be considered. If the property transfer provision listed no address perhaps more would be required to read the address on the first page as describing the property to be transferred. But where, as here, the property transfer provision contains the same marital home address, absent the city and state, it cannot reasonably be argued that they are not one and the same.

In *Chavez v. Barrus*, 146 Idaho 212, 192 P.3d 1036 (2008), the real property to be distributed in the marriage settlement agreement was identified as "The house located at 363 W 150 N, Blackfoot, Idaho." *Id*. at 219, 192 P.3d at 1043. The Court held that "the Agreement between Chavez and Barrus satisfied the requirements of I.C. § 32-917." *Id*. at 220, 192 P.3d at 1044. In doing so, the Court, like in *Pappin*, held that, "in assigning the interests in the marital homestead through a settlement agreement, certain minimum requirements must be met," namely, the requirements of I.C. §§ 32-917, 55-601, and 9-503. *Chavez*, 146 Idaho at 219-20, 192 P.3d at 1043-44. The Court concluded "that the divorce decree, in accordance with the parties' Agreement, divided the parties' community property, both real and personal, and vested title to the home in Barrus, thus effectuating the conveyance." *Id*. at 220, 192 P.3d at 1044. The Court emphasized that the divorce court is to effectuate a final distribution of property, both real and personal, and to "disentangle the parties' legal affairs," including in consideration of a marital settlement agreement. *Id*. In cases involving the transfer of real property in accordance with a marital settlement agreement, a court is involved in the determination of the terms of the agreement and ordering final distribution of the parties' real and personal property. This situation, as

---

[3]     We need not address Meliah's argument that the references within the Separation Agreement to extrinsic documents, such as the recorded warranty deed, purchase and sale agreement, and the mortgage, which contain legal descriptions of the property, satisfy the statute of frauds requirements.

[4]     We need not address Meliah's argument that the doctrines of part performance or equitable estoppel confirm the validity of the Separation Agreement.

7

contemplated by the referenced statutes, is distinct from an arms-length real estate purchase and sale in which a more precise legal description may be required. The Idaho Supreme Court has been clear on this point. The district court did not err in affirming the judgment of the magistrate court.

Both parties request attorney fees and costs on appeal. This Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.A.R. 41. Because Troy is not the prevailing party, he is not entitled to attorney fees. Meliah requests attorney fees pursuant to I.C. § 12-121, which permits a court to award reasonable attorney fees to the prevailing party when the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. Where a non-prevailing party continues to rely on the same arguments used in front of the lower courts, without providing additional persuasive law or bringing into doubt the existing law on which the court based its decision, an award of attorney fees under I.C. § 12-121 may be appropriate. *Plasse v. Reid*, 172 Idaho 53, 65, 529 P.3d 718, 730 (2023). This standard is satisfied in this case. Attorney fees and costs are therefore awarded to Meliah.

## IV.

## CONCLUSION

The transfer of property provision in the Separation Agreement is valid and enforceable. The district court's decision, on intermediate appeal, affirming the magistrate court's judgment is affirmed. Costs and attorney fees on appeal are awarded to Meliah.

Judge LORELLO and Judge TRIBE **CONCUR**.